NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS WACHENDORF,<br><br>           Plaintiff,<br><br>v.<br><br>CHRISTOPHER DEWIRE, et al.<br><br>           Defendants. | Hon. Stanley R. Chesler, U.S.D.J.<br><br>Civ. No. 04-5804 (SRC)<br><br>**OPINION** |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on the Motion of Defendants, Christopher DeWire, Scott Crater, Readington Township Police Department, and Readington Township for Summary Judgment (docket item #9). The Court having considered the papers submitted by the parties, and for good cause shown, **PARTIALLY GRANTS AND PARTIALLY DENIES** the Defendants' Motion (docket item #9) for the reasons set forth below.

**I. BACKGROUND**

On May 2, 2004, Plaintiff Thomas Wachendorf ("Wachendorf") was driving his automobile in Readington Township, New Jersey. Defendant Christopher DeWire ("DeWire"), a

1

police officer with the Readington Township Police Department, saw Wachendorf drive by on Route 22 in Readington. DeWire ran a random computer check on the license plate on Wachendorf's car and the response from this check indicated that the registration had expired. DeWire pursued Wachendorf in his marked police car. Once DeWire caught up with Wachendorf's automobile on School Road in Readington, DeWire activated the emergency lights on his vehicle. Wachendorf did not pull over or stop is automobile. Wachendorf proceeded to drive in an orderly fashion through Readington Township, followed by DeWire's police cruiser with it's siren sounding and emergency lights flashing, for over two miles. During this low speed "pursuit" DeWire was joined by Defendant Scott Crater ("Crater"), a Sergeant with the Readington Township Police Department, who responded in his police cruiser when DeWire radioed for backup. Wachendorf entered the driveway of his home on Holland Brook Road, and finally stopped in front of his house, with the two police officers, in their cars, following him.

DeWire and Crater proceeded to approach Wachendorf's car with their guns drawn. Upon noticing that Wachendorf did not appear to be armed, the police officers holstered their weapons. DeWire ordered Wachendorf to exit the vehicle. Within a few seconds of DeWire's order, Wachendorf began to open the driver's side door of the vehicle and DeWire forced the door open and ordered Wachendorf to exit the automobile again. When Wachendorf did not immediately comply and exit the vehicle, DeWire handcuffed Wachendorf's wrist and pulled him out of the car and onto the ground. DeWire asserts that Wachendorf resisted arrest while on the ground by assuming the fetal position and needed to be further restrained to complete the handcuffing and to execute a search of his person. After being handcuffed and searched, Wachendorf was assisted to his feet and taken to DeWire's patrol car. The entire incident was

videotaped by a camera located in DeWire's patrol car.

Wachendorf claims he did not hear the patrol car behind him because he had the air conditioning on and was playing ZZ Top loudly on his car's stereo. He claims that he did not see the patrol car behind him until he was nearly at his home because his rear view mirror was set for night vision. He also claims that, when the police pulled him from his vehicle, he fell to the ground and hit his head, knocking him unconscious. When he regained consciousness, Wachendorf claims the police were pulling him to his feet and pushing him towards a police car.

When DeWire and Crater were leading Wachendorf to DeWire's patrol car, the officers claim that Wachendorf refused to walk, requiring Crater to apply a compression handcuff wrist lock to Wachendorf's left wrist. Crater also claims that Wachendorf refused to comply with his order to enter the rear of the patrol car, requiring the application of another compression handcuff wrist lock to sit him down in the car. Upon Wachendorf's refusal to put his legs in the car, Crater pushed his head towards his knees to remove his leverage and pushed him into the police cruiser.

Wachendorf was taken to police headquarters where he was charged with eluding police, obstruction of the administration of law, and resisting arrest. After being released from police custody, his brother took him to the Hunterdon Medical Center where he was diagnosed with a fracture of his 5th metacarpal which, as the report from the x-ray indicates, was an "old" fracture. Wachendorf signed a waiver of indictment on the charges of eluding police and obstruction of the administration of law. A complaint and summons were issued to him on the resisting arrest charge. He was admitted into the Pre-Trial Intervention Program in Hunterdon County for 12 months.

Wachendorf claims that DeWire and Crater used excessive force against him in violation of his rights under the Fourth Amendment and 42 U.S.C. § 1983.  Wachendorf also contends that the excessive force by DeWire and Crater constituted assault and battery under New Jersey state law.  Wachendorf is also bringing suit against Defendants Readington Township and the Readington Township Police Department for failure to properly train and supervise their officers in the lawful use of force.  Defendants are moving for summary judgment, claiming that the police officers' actions did not constitute excessive force, the Plaintiff failed to make a sustainable claim against Defendants Readington Township and Readington Township Police Department, and seeking qualified immunity for Defendants DeWire and Crater as a dispositive defense to the Plaintiff's constitutional claims.

## II. DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

A.  **The Plaintiff's Claims Against the Township and the Police Department are Unsubstantiated.**

Section 1983 of 42 U.S.C. does not create substantive rights, but merely provides a remedy for the violation of rights created by federal law. Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). A prima facie case under § 1983 requires that a plaintiff demonstrate: (1) a person deprived them of a federal right; and (2) the person depriving them of that right acted under color of state or territorial law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The Plaintiff has brought claims against the Township of Readington (the "Township") and the Readington Township Police Department (the "RTPD") under § 1983 for negligent training and supervision of their police officers in the lawful use of force. To sustain § 1983 liability against the Township or the RTPD, respondeat superior liability is not sufficient. Monell v. Dept. of Social Services, 436

5

U.S. 658, 691 (1978). To sustain his claims, the Plaintiff must prove "the existence of a policy or custom that has resulted in a constitutional violation." Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (citing Monell, 436 U.S. at 694-95).

Liability for failure to train subordinate officers requires the Plaintiff to demonstrate that the constitutional violation at issue results from "deliberate indifference to the constitutional rights of [the Township's] inhabitants." City of Canton, Ohio v. Harris, 489 U.S. 378, 392 (1989). This deliberate indifference standard is applied both to Plaintiff's allegations of negligent supervision and failure to investigate. Groman, 47 F.3d at 637. The Plaintiff claims that there was no meaningful investigation by the RTPD into the use of force in the present incident and that such a "lack of meaningful investigation is probative of whether the police department either had a custom to tolerate the use of force, regardless of its legality, or exhibited deliberate indifference to its officers' use of force." (Pl. Br. at 28.) Evidence of a failure to investigate a single incident of use of force, however, is insufficient to impose liability on the Township or the RTPD under Monell, "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

In the present case, the Plaintiff notes that no investigation was conducted into DeWire's reported use of force in arresting Wachendorf, and the Plaintiff also makes vague references to other reported uses of force that were not investigated by the RTPD. (Pl. Br. at 28.) This, however, is not sufficient to sustain the Plaintiff's claims against the Township and the RTPD. As the Third Circuit noted, "vague assertions about the police department's failure to investigate other wrongdoings" coupled with a single case of failure to investigate, standing alone, "will not

support a reasonable jury finding of a municipal policy or custom of 'negligent supervision' which rises to the level of deliberate indifference required for § 1983 liability." Groman, 47 F.3d at 637. Accordingly, the Defendants' Motion for Summary Judgment to dismiss the claims against Defendants Reading Township and the Readington Township Police Department is hereby granted.

**B.      Disputed Issues of Material Fact and Unresolved Credibility Determinations Preclude Granting Summary Judgment for Defendants DeWire and Crater on the Plaintiff's Claims That They Used Excessive Force.**

Excessive force claims under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. Graham v. Connor, 490 U.S. 386, 394-95 (1989). While police officers are privileged to commit a battery pursuant to a lawful arrest, that privilege is negated if the force being used is excessive. Edwards v. City of Philadelphia, 860 F.2d 568, 572 (3d Cir. 1988). A cause of action exists under § 1983 when a law enforcement officer uses excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Brown v. Borough of Chambersburgh, 903 F.2d 274, 277 (3d Cir. 1990).

The reasonableness of a police officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The reasonableness inquiry is objective, but should give appropriate consideration to the

circumstances of the police which, as the Supreme Court has noted, are often "tense, uncertain, and rapidly evolving." Id. at 397.

In this case, summary judgment would be appropriate only if, as a matter of law, the evidence would not support a reasonable jury finding that the police officers' actions were not objectively reasonable. Without commenting on the weight of the evidence, the Court finds that the evidence presented to it could support a finding that the DeWire and Crater did not give Wachendorf sufficient time to comply with their order to exit the vehicle before forcibly pulling him from his car. The parties' account of what happened after Wachendorf was pulled from the vehicle is also contested. DeWire and Crater report that Wachendorf actively resisted their efforts to restrain and search his person, thereby justifying their subsequent efforts to physically restrain him, while Wachendorf reports that he was knocked unconscious after being removed from his vehicle and made no effort at resisting the officers that would justify the use of additional physical force against him.[1]

Depending on the resolution of these disputed facts, a jury could reasonably conclude that DeWire and Crater acted unreasonably and used excessive force in Wachendorf's arrest. Resolutions of such material issues of disputed fact and credibility determinations cannot be decided on a motion for summary judgment. The Defendants' Motion for Summary Judgment in favor of Defendants DeWire and Crater that they did not use excessive force in arresting Wachendorf is, therefore, denied.

---

[1] Once Wachendorf was on the ground, he was beyond the view of the video camera in DeWire's police car. The video, therefore, is not conclusive in resolving the issue of whether or not Wachendorf resisted the efforts of DeWire and Crater to restrain and search him and whether or not additional force was reasonably required by the officers to safely effectuate Wachendorf's arrest.

**C.     Disputed Issues of Material Fact and Unresolved Credibility Determinations Also Preclude Granting Summary Judgment for the Defendants on Qualified Immunity.**

The Defendants further claim that they are entitled to qualified immunity for their actions. Under the doctrine of qualified immunity, law enforcement officers, like other public officials, performing discretionary duties within the scope of their employment, are "shielded from liability for civil damages insofaras their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a police officer is entitled to qualified immunity, both the existence of a clearly established right and the objective reasonableness of the officer's actions are questions of law for the Court to decide, but any disputed issues of historical fact relevant to the Court's determination must be submitted to the jury. See Curley v. Klem, 298 F.3d 271, 278 (3d Cir.2002) ("while we have recognized that it is for the court to decide whether an officer's conduct violated a clearly established right, we have also acknowledged that the existence of disputed historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue.").

"Unless [a] plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Qualified immunity offers a defendant the "entitlement not to stand trial or face the other burdens of litigation" and, "like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id.

Claims of qualified immunity are to be evaluated using a two-step process. First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a

constitutional violation. Bennett v. Murphy, 274 F.3d 133, 135 (3d Cir. 2002). If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity. For the reasons noted above, however, the Plaintiff's submissions in this case, when viewed in the light most favorable to him, do make out a constitutional violation. The Court, therefore, must proceed to the second step of the analysis to determine whether the constitutional right at issue was clearly established at the time of the alleged violation. This requires the Court to ask the question of whether, "in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited?"[2] Id.

As noted above, a reasonable factfinder, taking all inferences in favor of the Plaintiff, *could* find that DeWire and Crater's use of force during the conduct of the arrest was excessive. A reasonable police officer would have known that use of excessive force in executing an arrest of a suspect was prohibited under the Fourth Amendment. As the Third Circuit noted:

> The Court of Appeals for the Ninth Circuit has noted that at least as early as 1985 the use of excessive force by officers in effecting an arrest was clearly proscribed by the Fourth Amendment as it held, quoting a 1985 Supreme Court opinion, that "the Fourth Amendment governs not only whether a person or thing is subject to a 'seizure,' but also 'the manner in which a . . . seizure is conducted.'" Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir.1993) (quoting Tennessee v. Garner, 471 U.S. 1, 7-8 (1985)). Moreover, as we observed in Burns v. County of Cambria, 971 F.2d 1015, 1024 (3d Cir.1992), "[t]his court has adopted a broad view of what constitutes an established right of which a reasonable person would have known." (citations and quotation marks omitted). Thus, in People of Three Mile Island v.

---

[2] "[The Supreme Court's holding in Saucier v. Katz, 533 U.S. 194, (2001)] regarding the availability of qualified immunity at the summary judgment stage does not mean that an officer is precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff. An officer may still contend that he reasonably, but mistakenly, believed that his use of force was justified by the circumstances as he perceived them; this contention, however, must be considered at trial." Bennett v. Murphy, 274 F.3d 133, 135 (3d Cir. 2002).

>Nuclear Regulatory Comm'rs, 747 F.2d 139, 144-45  (3d Cir.1984), we held that there does not have to be "precise factual correspondence" between the case at issue and a previous case in order for a right to be "clearly established," and we would not be "faithful to the purposes of immunity by permitting . . . officials one liability-free violation of a constitutional or statutory requirement."  Therefore, we hold that the right of an arrestee to be free from the use of excessive force in the course of his handcuffing clearly was established when [the defendant] acted in this case, and that a reasonable officer would have known that employing excessive force in the course of handcuffing would violate the Fourth Amendment.

Kopec v. Tate, 361 F.3d 772, 777-78 (3d Cir. 2004).

Accordingly, the Defendants' Motion for Summary Judgment granting Defendants DeWire and Crater qualified immunity against the Plaintiff's constitutional claims of excessive force is properly denied.  Because, as the Defendants note in their papers, "[t]he analysis of good-faith immunity offered by the Tort Claims Act is coterminous with the analysis of objective reasonableness under § 1983 qualified immunity" (Def. Br. at 19), the Defendants' Motion for Summary Judgment for good faith immunity for Defendants DeWire and Crater against the Plaintiff's state law claims of assault and battery under the Tort Claims Act is also denied.  See Wildoner v. Borough of Ramsey, 744 A.2d 1146, 1153 (N.J. 2000) ("The same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the [New Jersey] Tort Claims Act.")

**D.    Collateral Estoppel Does Not Bar the Plaintiff From Litigating the Issue of Whether or Not Defendants DeWire and Crater Used Excessive Force in Effectuating Wachendorf's Arrest.**

On May 3, 2005, New Jersey Administrative Law Judge ("ALJ") Anthony T. Bruno issued a decision regarding the removal of Wachendorf from his tenured position as a teacher

with the Moutainview Correctional Facility for conduct unbecoming an employee with the New Jersey Department of Corrections.  (See Def. Br. at Ex. A.)  The Defendants claim that the issue of whether or not DeWire and Crater used excessive force in arresting Wachendorf was already addressed and decided by a the ALJ in this earlier decision and should not be re-litigated here. (Def. Br. at 23-25.)  The 'factual findings' and 'legal conclusions' of the ALJ's earlier decision does not, however, preclude this Court from reviewing the material and disputed facts to determine whether or not summary judgment is appropriate in the present matter.

As the Defendants noted in their papers, the Court "must look to the state's preclusion law in determining what effect, if any, an ALJ's determinations have on [the Plaintiff's] Federal Claims [in the present case]." (Def. Br. at 23-24 (citing Caver v. City of Trenton, 420 F.3d 243 (3d Cir. 2005).)  Under New Jersey law, collateral estoppel may be applied to foreclose litigation of an issue when the party asserting the bar shows that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

Hennessey v. Winslow Township, 875 A.2d 240, 244 (N.J. 2005) (internal citations omitted).

The question before the ALJ in this earlier hearing, however, was not whether or not DeWire and Crater used unreasonable force in arresting Wachendorf, but whether or not Wachendorf's conduct that day was "unbecoming a public employee" and "so egregious as to warrant his dismissal from his tenure position" with the Department of Corrections.  (Def. Br., Ex. A at 5-6 (ALJ Opinion).)  The ALJ did make findings, necessary to the matter before him, that Wachendorf "'stone walled' the police" during and after the police pursuit and that such

"flaunting of lawful authority" was "conduct which brings discredit to himself and [] his public employer." (Id. at 8.) While the Defendants argue that a finding that the police officers' conduct was objectively reasonable was somehow "[i]nherent in th[e ALJ's] determination," this was not an issue presented to or litigated before the ALJ, nor was such a determination necessary to reach the ALJ's final determination in this matter. (Def. Br. at 24.) Accordingly, the Defendants' Motion for Summary Judgment seeking to dismiss the Plaintiff's claims of excessive force on the grounds that the issue had already been litigated before and determined by the ALJ is hereby denied.

### III. CONCLUSION

This Court, having considered the papers submitted by the parties, and for good cause shown, **PARTIALLY GRANTS AND PARTIALLY DENIES** the Plaintiffs' Motion (docket item #9). An appropriate form of order will be filed herewith.

Dated: August 16, 2006

                                               /s Stanley R. Chesler
                                               Stanley R. Chesler, U.S.D.J.